IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODRIGO VARGAS VASQUEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-1389 |
| | § | |
| RICK THALER, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (duplicate Document Nos. 9 & 10) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered the motion, the response in opposition (Document No. 16), the claim raised by Petitioner in his § 2254 Application (Document No. 1), the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (duplicate Document Nos. 9 & 10) be GRANTED, that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED, and that this case be DISMISSED WITH PREJUDICE.

I.      **Introduction and Procedural History**

Rodrigo Vargas Vasquez ("Vasquez") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a 2005 felony conviction in the 410th

District Court of Montgomery County, Texas, for possession of a controlled substance and money laundering, Cause No. 05-07-06012-CR. Vargas was charged by Indictment with both offenses on July 6, 2005. On November 9, 2005, Vasquez was found guilty by a jury of both offenses, and was thereafter sentenced to fifty years incarceration on the possession offense and ten years incarceration on the money laundering offense. Vasquez' conviction was affirmed on appeal on October 23, 2007, *see Vasquez v. State*, No. 09-05-536-CR, and his petition for discretionary review was refused on April 23, 2008.

On May 9, 2008, Vasquez filed a state application for writ of habeas corpus. That application was dismissed on July 23, 2008, on the basis that Vasquez' direct appeal was still pending. *Ex parte Vasquez*, Application No. WR-70,227-01. Vasquez then, on August 11, 2008, filed a second state application for writ of habeas corpus. That second application was denied by the Texas Court of Criminal Appeals on April 1, 2009, on the findings of the state trial court without a hearing. *Ex parte Vasquez*, Application No. WR-70,227-02. This § 2254 proceeding, filed by Vasquez on or about May 1, 2009, followed.

Respondent has filed a Motion for Summary Judgment (duplicate Document Nos. 9 & 10), to which Vasquez has filed a response in opposition (Document No. 16). This § 2254 proceeding is ripe for ruling.

II. **Factual Background**

The Texas Court of Appeals, in its written opinion affirming Vasquez' conviction, set forth the factual background as follows:

> On January 25, 2005, Vasquez, under the name "Eduardo Martinez," rented an apartment in The Woodlands. While Vasquez acknowledged that he leased the

2

apartment, he testified that he did so at the request of a friend, Antonio. Although Vasquez claimed that he rented the apartment for Antonio with funds that Antonio provided, Vasquez could give no identifying information concerning Antonio, and he did not know Antonio's last name or how to contact him. Vasquez disputed that he paid the monthly rent, but agreed that at Antonio's request, he paid the initial lease fees and deposit and that he paid the late May 2005 rental payment. Employees of the apartment complex stated that they dealt with Vasquez with respect to several issues that arose during the lease period, including an electrical problem and problems with the garage door's remote-control.

Acting upon information provided by other law enforcement officials, an officer from the Montgomery County Sheriff's Department investigated Vasquez' apartment as a possible drug "stash house" (a location where drugs are off-loaded from one vehicle, often broken down into smaller quantities, and then loaded into another vehicle to continue shipping the drugs across the country). After reviewing the file regarding the apartment, the deputy sheriff discovered that when Vasquez leased the apartment, he provided the apartment manager with a false name, a false social security number, a false driver's license number, and a false license plate number. Vasquez maintained that Antonio provided him with the information that Vasquez, in turn, supplied the apartment complex.

After obtaining a search warrant, officers entered the apartment; no one was present. Consistent with the information the sheriff's department received, the officers located a secret compartment above a kitchen cabinet that contained seven bricks of cocaine. The officers removed other drug-trafficking paraphernalia from the apartment, including an electronic money counter, a box of latex gloves, an electronic scale, and several packages of clear plastic wrap. The officers noted that the apartment did not contain much furniture, clothing, food, or many household items. An officer also testified that the residents that lived adjacent to Vasquez' apartment reported they did not see regular traffic in and out of Vasquez' apartment. The officer explained that minimal off-hour traffic is desirable for a residence used in drug-trafficking.

The officers also obtained fingerprints from various locations inside the apartment. Although Vasquez claimed that he had never been in the apartment and had no knowledge of the drugs contained therein, his fingerprints and palm prints were recovered from a glass table within the apartment. To explain the presence of his prints on the table, Vasquez testified that he helped Antonio load the table at a furniture store. Other identifiable prints recovered from evidence taken from the apartment did not belong to Vasquez.

After the search, the apartment complex manager contacted Vasquez and told him that the apartment had been broken into, and asked whether he wanted the complex to contact the police. Vasquez responded, "no," and told the manager that

he would be in the next day. At trial, Vasquez explained that he requested that the complex not call the police in order to allow him time to contact Antonio and find out what Antonio wanted him to do. Nevertheless, Vasquez and not Antonio arrived at the complex the next evening. Upon his arrival at the complex, Vasquez was arrested by the police. He initially told the police that his name was Eduardo, but later properly identified himself.

When he was arrested, the police discovered that Vasquez possessed $8,996 in cash. Vasquez testified that he took the cash with him when he left his house because of his marital problems. Vasquez told an officer that he did not have a job. Vasquez also testified that he did not have a bank account.

Vasquez stated that he had prior experience working in construction and installing custom wheels. When working construction, Vasquez testified that he made $450 a week and when installing custom wheels, he made $400 a week.

A forensic chemist with the Texas Department of Public safety tested the drugs removed from Vasquez' apartment. She testified that the seven brick packages weighed a total of 6.91 kilograms. The testing of the bricks revealed that they contained fifty-five percent (55%) cocaine.

*Vasquez v. State*, No. 09-05-536-CR, at 2-4.

### III. Claim

Vasquez raises one claim in his § 2254 application: that his trial counsel was ineffective for failing to pursue and litigate a motion to suppress. According to Vasquez, the search that resulted in the seizure of the cocaine was illegal and counsel should have pursued the motion to suppress that he had filed prior to trial.

Vasquez raised this claim in his second state application for writ of habeas corpus. That application was denied by the Texas Court of Criminal Appeals without written order on the findings of the state trial court without a hearing, an adjudication of the claim on the merits.

Respondent maintains in the Motion for Summary Judgment that Vasquez' ineffectiveness claim is subject to dismissal under 28 U.S.C. § 2254(d) because the Texas Court of Criminal Appeals'

rejection of the claim was not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence. Vasquez, in response, argues that the Texas courts' adjudication of his claim was unreasonable.

### IV.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*,

5

538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary

responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

**V.    Discussion**

In his sole claim, Vasquez maintains that his trial counsel, Rudy Justice, was ineffective for failing to "completely litigate his motion to suppress the evidence." § 2254 Application (Document No. 1) at 10. According to Vasquez, the dog sniff upon which the search warrant was issued was itself an unconstitutional search, and therefore counsel should have pursued the motion to suppress he filed prior to trial.

In the state habeas proceeding, Mr. Justice addressed Vasquez' claim of ineffectiveness as follows:

> In my personal and professional judgment while representing Rodrigo Vasquez I did not find any information during my investigation to support and/or pursue the motion to suppress the evidence because a canine sniff, upon which the magistrate relied, was [not] an illegal search, and therefore in my professional opinion

the motion to suppress the evidence was not necessary.

*Ex parte Vasquez*, Application No. WR-70,227-02 at 49. Finding the statements of counsel in his affidavit "credible," the state trial court found counsel to have been effective. Indeed, the state trial court made the following particularized findings of fact and conclusions of law relative to Vasquez' ineffectiveness claim:

FINDINGS OF FACT

* * *

8. The Court is familiar with the effective performance of trial counsel, Rudy Justice, who has long practiced in the courts of Montgomery County and is qualified for appointment as trial counsel in criminal cases.

9. Mr. Justice has submitted a credible affidavit in answer to Applicant's claim of deficient performance.

10. Based on his credible affidavit, Mr. Justice found no information or legal reason to pursue the motion to suppress he had initially filed with this Court.

11. The trial record reflects that the detective investigating this case obtained a warrant to search Applicant's apartment after receiving a Crime Stoppers tip, conducting a knock and talk in which no one answered the door, calling a K-9 handler to walk a certified drug dog to the front door, and observing the drug dog make a positive alert for narcotics.

CONCLUSIONS OF LAW

1. There are no material, previously unresolved issues of fact which are material to the legality of Applicant's conviction and sentence and there being ample evidence in the record for the Court to rule on the relief sought, an evidentiary hearing is not required.

2. A drug dog sniff at a person's front door that is accessible to the general public does not constitute a "search" under either the United States or Texas Constitutions. *Wilson v. State*, 98 S.W.3d 265, 272 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd).

3. An alert for narcotics from a certified drug dog adequately establishes probable cause for the purposes of obtaining a search warrant. *Rodriguez v.*

>   *State*, 106 S.W.3d 224, 229 (Tex. App. – Houston [1st. Dist.] 2003, pet. ref'd).
>
> 4.  Trial counsel's contention that he had no information or legal reason to pursue his motion to suppress is supported by the trial record. *Wilson v. State*, 98 S.W.3d 265, 272 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd); *Rodriguez v. State*, 106 S.W.3d 224, 229 (Tex. App. – Houston [1st Dist.] 2003, pet. ref'd).
>
> 5.  Applicant failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 669 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

*Ex Parte Vasquez*, Application No. WR-70,227-02 at 72-73. The Texas Court of Criminal Appeals adopted these findings of fact and conclusions of law as its own when it denied Vasquez' state application for writ of habeas corpus on the findings of the state trial court without a hearing. This rejection of Vasquez' ineffectiveness claim is not contrary to or an unreasonable application of the clearly established federal law, as determined by the Supreme Court of the United States.

Claims of ineffective assistance of trial counsel are generally measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

When counsel is alleged to have been ineffective for failing to pursue a motion to suppress, *Strickland's* prejudice prong requires proof that the motion to suppress would have been granted, and that the exclusion of evidence would have resulted in an acquittal. The Supreme Court made this clear in *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986), in which it held that:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Here, as found by the Texas courts, Vasquez cannot prevail on his ineffectiveness claim because there was no basis for counsel to pursue or litigate the motion to suppress. The Supreme Court has held that a dog sniff conducted in the open air does not constitute a search within the

10

meaning of the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 707 (1983); *see also United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993). While Vasquez argues, in reliance on *United States v. Thomas*, 757 F.2d 1359, 1367 (2nd Cir. 1985), that a dog sniff outside a closed residence would constitute a search because it would intrude on a person's legitimate expectation of privacy in his residence, the holding in *Thomas* has not been adopted by the Supreme Court and is not the law in either this Circuit or the State of Texas. Thus, because there is no Supreme Court or Texas jurisprudence that supports Vasquez' argument that the search at issue herein was unconstitutional, counsel was not ineffective, within the meaning of either *Strickland* or *Kimmelman*, for failing to pursue the motion to suppress. In addition, because the Texas courts' rejection of this claim is not contrary to or an unreasonable application of either *Strickland* or *Kimmelman*, no relief is available on this claim under § 2254(d).

### VI. Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Vasquez on the merits of his claim under § 2254(d), the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (duplicate Document Nos. 9 & 10) be GRANTED, that Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) be DENIED, and that this § 2254 proceeding be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and General Order 80-5, S.D. Texas.

Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 16th day of November, 2009.

Frances H. Stacy
United States Magistrate Judge